23-1957, Xerox v. Snap. Ms. Eesley, please proceed. Good morning, and may it please the Court, Alexandra Eesley from McCool Smith for Xerox. The Board erred in finding claims of the 439 patent obvious, and there are three specific issues that I would like to discuss today. So first, the Board misconstrued the term context graph by reading the word graph out of the claim term. Second, the Board erred in analyzing limitations 1b and 1c because it did not identify where in the prior art each element is taught, and it relied on theories not in Snap's petition. And third, the Board relied on a conclusory and generic efficiency rationale for motivation to combine. Reversal is appropriate for these three reasons, and I would like to begin by discussing claim construction. Well, before you even get to claim construction, this is a case in which the Board made an alternative finding, right? So even if you prevail on claim construction, the Board seems to have addressed that as well, hasn't it? The Board did make an alternate finding for obviousness, yes. But the problem here is that the Board did not give a reasoned analysis for its obviousness finding, and so therefore, reversal is still appropriate. But the answer to the Chief's question is that yes, whining only on one would be sufficient. We do not have to, if we were to disagree with you but agree with the Board on the second part, we don't need to reach the claim construction issue. Yes, Your Honor. But on that point, I mean, is there district court litigation pending now that implicates the claim construction question? There is district court, there's a district court case, but it has been stayed until all the IPRs and the related appeals are resolved. And it involves these claims that would require claim construction of graphs? Yes, Your Honor. Are there other claims in this family of patents that would require that construction? I will have to check and get back with you on rebuttal if that's okay. So, just to bring you back to claim construction, I see, at least the issue for me seems to focus on the language in Column 7 of the patent, and to the extent to which that gave the Board a basis to broaden its construction of graph, to say it's more than, it doesn't need a graph. So, could you focus on that language and why that presumably does not do it for you? Yes, Your Honor. So, what the Board relied on is, so first the Board relied on the statement from the overview, which is in Column 3, and it stated that particular statement reads, a context graph is an in-memory model that stores facts and assertions about a user's behavior and But describing that particular disclosure does not mean that it is not a graph. And we see throughout the specification and in the claims themselves that the word context graph is used, and there's nothing in the specification that indicates that the patentee was trying to render the word graph meaningless. Well, you have to answer Judge Prost's direct question, though. Her direct question was, what about the language at Column 7, which says, using a typeless approach to data storage? Why isn't that indicating that a context graph could be a typeless approach to data storage, which suggests it doesn't have to be displayed in a graphical format? Understood. My mistake. I thought you were referring to it a little bit earlier in Column 7. So the disclosure at Column 7 that discusses typeless approach and entity relationship data is merely describing how the underlying data in the context graph is stored. So Dr. Martin, who was a retained expert in this case, stated that the context graph absolutely must store its graph-based model data using some type of lower-level storage. So this passage is merely giving examples of how the underlying data can be stored and identifies three types, entity relationship, unstructured, and typeless. And if I may just address the database argument that SNAP and that the Board rely on. The Board contends in its final written decision that it's not reading the word graph out because it says a person of ordinary skill in the art would understand that the data entries in NHTSA's relational database are conceptually nodes and that the relationship between the entries are conceptually edges. But there's two problems with that particular argument. First, that argument was waived. There's no mention of NHTSA's relational databases until SNAP's reply. And the prejudice here is real because SNAP could have made the argument about NHTSA's relational databases in the petition, but it didn't, and Xerox had no opportunity to offer expert testimony on that particular issue. And second, as I just mentioned, the reference to databases in column 7 is only offered to discuss how the underlying data in the context graph could be stored. And how the contents of the context graph can be stored does not change the contents of the context graph itself. So that particular argument goes to the storage, not the structure. And I would just again emphasize that we see the word context graph used in the claims themselves, and in Dependent Claim 20, we see that it refers to the context graph, which tells us that it's talking about the context graph recited in Claim 1. And Dependent Claim 20 specifically includes a built-in assumption that that context graph includes nodes and edges. Can I take you back to column 3? Because it seems like the board viewed the statement in column 3 as a definition, but somehow not a helpful definition. What is your view, and that's the statement around lines 20, a context graph is an in-memory model that stores facts and assertions about a user's behaviors and interests. Why is that not a definition and also very helpful, particularly indicating that a context graph is what that says, but doesn't necessarily have to be in a graph format? So first I'll just start by going back to the word graph. Again we see that the word graph is used, and there's nothing in the spec to indicate that the patentee was trying to render that word meaningless. Second, this is not the only time that we see the spec talking about a context graph is something. The language in column 7 at 26 through 28 states that Context Graph 406 is a per-user in-memory graph-based model. 406 is a specific embodiment, it's not the full breadth of the context graph, is it? Yes, Your Honor, I agree that Context Graph 406 is an embodiment, it's the only depiction we see in the 439 of a context graph, and it shows that graph with nodes and edges. But I will just note that the particular statement that you pointed out in column 3 is also discussing embodiments. If you look at the overview at column 2, line 48, it begins with, Embodiments of the present invention solve the problem of efficiently developing context-aware systems. And then it goes on to describe the embodiments. So again, we see nothing in the specification that indicates that the word graph should be read out of the term context graph, and in fact everything in the specification, both the statements and the references to the graph itself and the depictions in the figures, as well as the claim language, confirm that context graph is in fact a graph-based model. Now, if we agree with you that context-based is graph-based, what do we do with the PTO's alternative finding that nonetheless it's disclosed by the, I'm just going to call it DG reference because you can't pronounce the long name. So the DG reference, which is incorporated into the other piece of prior art that is cited. Yes, Your Honor. So there's two reasons that the board's finding, the alternate finding based on the DG reference, is insufficient. So first, NIST cites the DG reference as an example of a method for extracting pertinent information from unstructured data. So it is not, the DG reference is not cited as an example of a method for using a graph-based model to store contextual data. And DG does not disclose a graph, and there's no mention of graph anywhere in that reference. Well, but the problem is, I think, and I don't know if I remember it right, I've lost off my head, it's figure eight, right? They point to figure eight and they say, oh my goodness, that looks exactly like 406 in your patent, and pretty much does, and that is a disclosure to a skilled artisan of a  Yes, Your Honor. SNAP does point to 408, or excuse me, does point to figure eight, and they include that in their brief as well. But the problem with figure eight is that it is not depicting a context graph. It is depicting an illustration that's used to show that the word apple can refer to either a company, or a person's name, or a fruit. So DG is, the DG reference Well, I mean, but it doesn't look like it has the nodes and the edges and all the other stuff that is indicia of the context graph as you describe it in the patent. I agree that it does look very similar to context graph 406, but I think you have to look at the reference and what it's actually stated about But I can't look at the reference because, you know what, I mean, I can, but that doesn't help you because the standard of review for me on what a piece of prior art discloses is substantial evidence. And if you honestly think that I can look at a figure that looks exactly the same as your figure, which you say is a context graph, and if you think I'm going to say there was no substantial evidence for the PTO to conclude that the figure in the prior art is also a context graph, you can't win that argument. Do you see? You can't win that. That's not winnable. Well, I think the issue here with the DG reference is that the board has to provide a reasoned analysis once again, and it can't cherry pick figure 8 and ignore what the reference actually says about it. And the board also never explains why or how a person of ordinary skill in art would be motivated to look to DG's machine-implemented data extractor to modify NHTSA's storage. In fact, all it says is NHTSA and the DG reference could be combined in a manner claimed. And it provides no explanation about how one would actually combine the references. It just says that a person of ordinary skill in art would know implementation details that could be used to combine the two references. So that type of generic and conclusory analysis for motivation to combine is insufficient. And I think that's established in the personal web case, which states that, you know, the fact that the two references can be combined is just not sufficient, unless there's any more questions about that. Well, just to follow up on that point, I mean, you say, I think in your brief, that the simple fact that a person skilled in the art would want a system that was more efficient is not efficient. Is that really what our law says? That this is going to be more efficient? Is that not a motivation to combine? Well, I think the issue, there are several issues with the motivation to combine. So SNAP says that these two references, that NHTSA and NIKON would be combined to preserve resources and the board adopts that reasoning, which is error for several reasons. And first, it relies on this conclusory efficiency rationale. But all it states is that a person of ordinary skill in the art would have recognized that NHTSA was inefficient because it pushes all the data from the context graph to the recommender and therefore would have looked to NIKON which only pushes the change data. But what the board doesn't address is the fact that NIKON is all about security and ensuring that context data is secure and remains private. And so NIKON would actually decrease efficiency. But because the board doesn't provide any more reasoned analysis other than just saying that it would be more efficient, that's error. Because the purpose of NIKON's registration is to prevent unauthorized access to user's private data. That's at APTX 1128. And NIKON includes an additional authorization layer which is used to protect that data and it would decrease efficiency due to an outlay of resources because of that particular layer. So the efficiency argument doesn't work because the reference that they're turning to, NIKON, would actually decrease efficiency and it's also a conclusory reasoning. There's no more explanation offered by the board other than merely stating that a person of ordinary skill in art would want a more efficient system. And we don't believe that's appropriate or sufficient for motivation to combine under the active video case and personal web. Okay, would you like to save some time for rebuttal? Yes, sure. Okay, very good. Thank you, Your Honors. George Iacofsky on behalf of staff. I think as we just heard from counsel with respect to the patent and the context graph claim construction, as was rightly noted by Your Honors, the embodiment 406 includes an entity-data relationship. It's not limited to a graph-like structure as we just heard from counsel in terms of a graph being something that is in one figure and not even described in that figure. You don't think 406 is limited to a graph-like structure? What about column 7, line 26? Context graph is a per-user in-memory graph-based model. It is clearly a graph. We can't remove the word graph from context graph. It does not mean that the word context graph, which does not, there's no evidence in the record that there's a plenarity of meaning to context graph. So when we look at the words context graph in the court's cases that we don't disembody one word from a combined word here, we look to the fact that the context graph in this patent is broadly disclosed. It's not disclosed as having nodes and edges. And frankly, when it was intended to be claimed, it was claimed in claim 20.  Context graph is a per-user in-memory graph-based model. That means it has to have a graph. You read out the graph. Why does it not have to have a graph? Your Honors, we do not disagree with the fact that it has to have a graph, but as you have in column 7, the context graph 406 may store data according to different data models. It's not just a node tree architecture, including data models for entity relationship data and unstructured data. If it was simply one structure, as is posited by Xerox, then it would not be able to have, as is disclosed in column 7, this in lines 42 through 46, AAD1, it would not be able to have these different data models. I'm confused by what your position is. I thought 406 is an embodiment that you agree is in a graph form, but that context graph as a claim term is used more broadly, and it doesn't have to be a graph. Did I misunderstand your position? No, you did not misunderstand my position. Okay, so then how can we read graph out of the term context graph? I don't think graph is limited to, I guess the dispute or the crux of that claim construction issue, which again is that graph is not limited to having nodes and trees. It would be like saying one figure is definitional when the patent is with repeating consistent usage, that context graph is a very, let's call it unstructured and broad-based storage mechanism. The data structure is broad, as shown in column 3 and repeated in column 7. I don't, I'm just not, I'm not following your argument. I think I followed it better in your briefs than I do right here. But, I mean, when it says a context graph, if nothing else, if it said nothing else in the specs, it was just the words context graph, I would think that has to be a graph. Like, suppose it doesn't give you any specific details about what a context graph is. It just says, and then there's a context graph. I think that all normal humans would think that has to be a graph. And so you're starting from a proposition that you've, there's a word used, and that word has a meaning that people would understand. And so what you really need is to show that the word isn't limited to what the normal meaning of that word would be somehow. How have you shown that? Your Honor, respectfully, I would say the first time the patent talks about it, as it does in column 3, is it tells you what a context graph is. It's an in-memory model that stores facts and assertions about a user's behavior and interests. Yes, but it uses the word graph. So why is the word graph not subsumed as one of the limitations to what a context graph is? I believe, Your Honors, that there's no evidence that says a graph must be limited to nodes and trees. As I said, there's even claim 20 that added a limitation after rejection that actually added the elements of It didn't add the nodes. It doesn't render it superfluous. Claim 20 added... Yeah, nodes and edges. No, it didn't just add nodes and edges. It added something else. It did. You're right. A topological change. It wouldn't be superfluous if we understood nodes and edges to be part of a graph. Could you repeat that, Your Honor? Claim 20 would not be superfluous if we understood the term context graph to already include nodes and edges. I'm not suggesting that claim 20 is superfluous. I'm just saying when the applicant wanted to call out... In particular, that's disjunctive in claim 20. When the applicant wanted to call out nodes and edges, the applicant called out nodes and edges in the claims. In particular, what we face in this litigation... If you looked at, originally, Xerox's view of this asset, the patent, when we first got into litigation, in the infringement contentions, as we cited in our brief, they had the same view we did as the breadth of this patent and the breadth of the context graph. And it's only now, in hindsight, with respect to the PTAB, that they've all of a sudden reverted that the word graph has a different meaning and that it's somehow limited. I mean, that's kind of putting us in a different position. I don't understand that they said the word graph has a different... The word graph means a graph. I don't understand your argument at all because a graph is a graph. I'm just... I'm very confused. I'm sorry. Well, Your Honors, even if you... Again, if there's disagreement with respect to graph, you know, as was mentioned during argument, they... So here, look, this sentence you keep harping on in Claim 3. Yes. A context graph is an in-memory model that stores facts and assertions. Okay. Now, you want me to read graph out of that because you think everything that came afterwards with the in-memory model somehow eliminates the word graph from the sentence because you think it's broader. It's defining it as something broader than just a graph-based architecture. But imagine I say instead of this, I say a bicycle is a vehicle that transports a person across the street or down the road, right? The word bicycle is not suddenly any vehicle that transports the person. The word bicycle actually has an implied meaning. The rest is a sense of purpose. It's not even a structure that causes you to think the word graph is no longer imported into that sentence. Just like my word bicycle would still conjure a particular image. The word graph conjures a particular... It's got to be graph-based. A non-graph-based thing would not be a graph. I would agree that in general English usage, graph may have some connotation in particular mathematics. I think the one important skill in the art is the board found. I think also in particular with Column 7 because then you're looking for data structures. As a computer science, one important skill in the art, which someone with a computer science degree with two years wasn't objected to by Xerox, looking at this and then they see that the disclosure in Column 7 says it can store data according to different data models. It doesn't say I'm going to be storing data in nodes or storing data in edges. It doesn't say that. It says we're going to store it in entity relationship data and unstructured data. That sentence alone would tell someone that I'm not storing things with a specific methodology. That's what they have as a disclosure. The board did say, as you just alluded to, in A15, that a person who were in skill in the art would not have understood the 439 pattern to be limiting in the sense that it requires a graph to store information about a user in the form of nodes and edges. The board clearly understood the knowledge of personal learning skill that way. What is the board's support for that? Is it just their reading of the patent or are they relying on something else you can see in the record? I think as you see, your honors, you cited to in A15, they point to, and they say see for example, but they point to that same citation that I just read on Column 7, 36 through 40. That sentence, there's not many ways to read that sentence and change it to say the data structure is a broader data structure. It's not limited to a specific data structure. They go further at the end of the page and they do cite the word graph is not superfluous because of the relational database aspect of it. Once we have relational database, relational database does not necessarily mean or doesn't mean that I'm going to have nodes and edges. We asked your colleague about whether the patents being asserted in district court litigation. Is there some need for us to determine what the correct construction here is if, just for the sake of argument, if we were persuaded by your alternative argument about the application of it here? Yes, there is, your honor. In fact, on Rule 12, Judge Barad denied our 101 motion. Actually, on Step 1, although perhaps it was a Step 2 analysis by Judge Barad, he denied on Step 1 saying they're factual issues. As I said, it's probably more Step 2, but Step 1 he did it. If we were just for the sake of argument, if we were to affirm the board finding that the patent is unpatentable, isn't that the end of the patent? That is the end. Context graph was an issue for Judge Barad. That's all I'm saying from a claim construction, but you're right. If we affirm even on the alternative grounds, that's the end of the story. I'm going back and forth with my law clerks. I'm trying to understand something. Are you saying that you can have a graph without nodes and edges? I don't understand that. Are you saying that there can be a graph-based model that is still a graph, as an ordinarily skilled artisan would understand what a graph is, but it doesn't have nodes and edges? Yes. I guess there's two ways of looking at it, Your Honor, for the computers. I guess maybe I'm burdened from having a computer science degree. There's two ways of looking at it. I hate to tell you this, but I also have one, but keep going. No. The context graph, first of all, is a phrase together. We're not isolating out the word graph, right? When it describes a context graph- Answer my question. Is there another form of graph in this technology that doesn't have nodes and edges? Because you're skirting all over the place, and I'm trying to figure out your construction, and I don't understand your argument. And I want to. I understood, Your Honor. I apologize. It's, again, just a context graph in this patent, how it's described. I'm not asking about this patent. You're saying, oh, the PTO found it doesn't have to have nodes and edges, and Judge Stark pointed to the sentence. And I'm trying to understand, well, does that mean they say it doesn't have to be a graph-based architecture because they've concluded it doesn't have nodes and edges? And then I'm thinking to myself, or are they just saying it doesn't have nodes and edges, but it's still a graph-based architecture? And then I'm thinking, well, then what does it look like? I don't understand. I'm trying to understand this technology. So what is your argument that it doesn't require a graph-based architecture when it says context graph? Or is your argument that it requires a graph-based architecture, but a graph-based architecture could have many forms, forms that are still graph, but not requiring nodes and edges? I think the argument is, obviously, the latter. It would fit more in the description of the latter in the sense of, it's still, obviously, a context graph, which is a graph. I didn't ask if it's a context graph. I asked if it's a graph-based architecture. I'm being very clear. Stop skirting me. I apologize. I'm not trying to skirt. To the extent we're looking at a graph-based architecture in the context of this patent, the graph-based architecture does not require nodes and edges. Does that mean it doesn't require a graph? Is there another graph-based architecture, graph-based architecture, that doesn't require nodes and edges in this field? A relational database, for example, a relational database doesn't require nodes and edges, or if you want to look at a relational database. A relational database is not a graph. It's not a graph-based architecture. That's not a graph. If it doesn't require the nodes and edges, it's not a graph. Well, this patent's telling you that this graph is a relational entity, you know, relationship, that that's included. Okay, well, relational database is a broader label. A graph-based architecture is one of many forms of a relational database, correct? Subset. It could be, Your Honor. It could be a subset. I don't know that it is, in all instances, a subset. Okay, do you have anything further? I mean, unless you have further questions, again, even if you were to reverse on the context graph, as you said, the alternative findings by the board are supported by substantial evidence with the DG reference, let alone the combination of NITS and Aikman. And so, you know, in either direction, even if you were to find the context graph that would have a different construction, we don't think it's of any import. Your Honor, this counsel says that you waived the argument that NITS's relational database are the nodes and edges. Did you waive it? And if not, how can we prove that you did not waive that argument? No, we did not. It was disclosed. It was disclosed in particular, for example, in Dr. Almaroff's reply declaration. They didn't depose Almaroff. They didn't move to strike. Yeah, isn't the reply too late? No, because it's consistent with what is in the petition. And all the way, again, there was no motion to strike. They moved to strike many items. That was not Dr. Almaroff, and they didn't depose Dr. Almaroff. They decided not to depose him. And so, by note that this is not a new ground, no deposing, it's just providing another reason why the art discloses context graph. And so, no, it's not a waived, Your Honor. Thank you for that. Great, thank you very much. Thank you. Thank you. Ms. Easley, are you burdened by a computer science degree? I am not, Your Honor. Oh, well, then you're maybe not smart enough like the rest of us to understand this case. That might be the case, but I don't think so. And I just want to start by first addressing your question about the 439 family members. There are no family members of the 439 that were asserted in the district court case, so it's just the 439 pen. Regarding the DG reference. I hope you know that wasn't a slam on you. Yeah, no, I got you. Thank you for that. They point to figure 8 in the DG reference, but that's not enough. It doesn't have nodes and edges, and nodes and edges aren't about storage. They go to structure, and so they have not pointed to a context graph. And instead, they just rely on conclusory reasoning, and that's insufficient. Can you answer my question? If the word context graph doesn't require nodes and edges, is there anything else in this field that's been articulated by anyone that would constitute a graph in this sense? Yeah. No, Your Honor. And in fact, Dr. Martin said that a person of ordinary skill in art would understand a graph-based model to have nodes and edges, and Facebook's expert also said that he understood context graph to be a graph-based model. Can I ask you then, at page 816, the board finds a person of ordinary skill in the art would have understood that data entries in a database conceptually are the nodes, and the relationships between the table entries such as pointers and keys are conceptually the edges. Isn't there substantial evidence to support that that is the way a person of ordinary skill in the art would understand what is meant by context graph in this pattern? Your Honor, I think the board, that's the extent of their analysis, and they don't explain why or identify their support. They merely cite to SNAP's reply, which is why we, why I mentioned earlier that this argument has been waived. And if we look at the petition, we can see that the SNAP said, if context graph is construed to require graph-based quality then the board would need to go beyond NITS. So it agreed that NITS didn't disclose graph-based properties, which is where we get the relational databases. And then in the institution decision, nothing was said about the databases. Xerox did not address the databases in the patent owner's response since it hadn't yet been raised. And it did not come up until SNAP's reply. So again, we would argue that the retention of databases M439 merely goes to storage of the underlying data. And finally, I will just say that we will rest on our briefs for the arguments about limitation 1C. All right. I thank both counsel. The case is taken under submission.